TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00354-CR






Jack Elwood Hooper, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-2001-620, HONORABLE JACK H. ROBISON, JUDGE PRESIDING (1)







O P I N I O N



 Appellant Jack Elwood Hooper appeals his conviction for possession of a controlled-
substance analogue of more than four hundred grams. See Tex. Health & Safety Code Ann.
§ 481.123(b)(2) (West Supp. 2003). In a bench trial, the trial court found appellant guilty of the
offense charged. Appellant "entered a plea of true" to the enhancement paragraph of the indictment
alleging a prior felony theft conviction. The trial court assessed appellant's punishment at fifteen
years' imprisonment. We will affirm the trial court's judgment.


BACKGROUND


 Appellant was originally indicted for this offense on March 2, 1995. The first count
of the original indictment alleged that on or about November 17, 1994, appellant:


knowingly and intentionally possess[ed] a controlled substance analogue, namely,
dextromethorphan and ephedrine, a substance which is intended in whole or in part
for human consumption and which is specifically designed to produce an effect
substantially similar to or greater than the effect of the controlled substance, to wit: 
3, 4 methylenedioxy methamphetamine in an amount of aggregate weight, including
any adulterants and dilutants, of more than four hundred grams.



The primary offense was prosecuted under the provisions of section 481.123(b)(2) of the health and
safety code, which were in effect in 1994. See Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1,
1989 Tex. Gen. Laws 2230, 2940 (Tex. Health & Safety Code Ann. § 481.123(b)(2)). (2) On
December 5, 2001, appellant was reindicted while the original 1995 indictment was pending. The
reindictment contained a tolling paragraph alleging that appellant had been indicted on March 2,
1995, for the same offense and that indictment was pending when the reindictment was returned. 
The third paragraph of the reindictment alleged a prior felony theft conviction on September 26,
1991, for enhancement of punishment.

 On May 7, 2002, appellant waived trial by jury and entered a plea of "not guilty" to
the primary offense, the only count in the reindictment. Appellant entered pleas of "true" to the
tolling paragraph and to the allegations in the enhancement paragraph. The evidence was presented
in the form of affidavits and stipulations after appellant waived the appearance, confrontation, and
cross-examination of witnesses. In a sworn stipulation, appellant admitted that on November 17,
1994, he knowingly and intentionally possessed dextromethorphan and ephedrine in an amount of
more than four hundred grams. Appellant also stipulated to the admission of the State's exhibits.
Among the exhibits offered were the offense report, and news articles from the Associated Press
[printed in the Corpus Christi-Caller-Times] and the Dallas Morning News concerning the
increasing use by young people of high doses of dextromethorphan, a noncontrolled substance,
which can produce the effects of the controlled substance known as "ecstacy." Department of Public
Safety Chemist Joel Budge stated in his affidavit that the 930 tablets submitted to him were
dextromethorphan and ephedrine and were similar in appearance and designed to produce an effect
that was substantially similar to 3, 4 methylenedioxy methamphetamine, which is ecstasy, and were
intended for human consumption. Dr. William Watson, of the University of Texas Health Science
Center at San Antonio, described in his affidavit that the effects on the human body of a combination
of dextromethorphan and ephedrine would be indistinguishable from the effect of ecstasy. 
Pharmacist David Zatopek detailed in his affidavit the effects of high doses of dextromethorphan and
ephedrine, and that together they were being abused for their side effects. Hays County Narcotic
Task Force Sergeant Chase Stapp swore in his affidavit that, based upon his experience,
dextromethorphan and ephedrine are packaged together and sold by drug dealers as ecstasy. 

 Appellant offered the affidavit of Max Courtney, a forensic chemist, who stated that
dextromethorphan and ephedrine were non-controlled substances and sold to the public over the
counter and often used as a cough suppressant. We observe that 3, 4 methylenedioxy
methamphetamine (ecstasy) was a controlled substance listed in Penalty Group 2 at the time of the
charged offense. See Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230,
2928-29 (Tex. Health & Safety Code Ann. § 481.103(1), since amended).


DISCUSSION


 Under "Brief of the Argument," appellant presents his single point of error as follows:
"The Statute making it an offense to possess a chemical analogue 'specifically designed to produce
an effect substantially similar to a controlled substance' is vague as applied to appellant." 
(Emphasis added.) However, our review of the record reveals that appellant failed to raise the "as
applied" issue at the trial court in any manner. The question first presented is whether appellant's
contention was preserved for review. See Tex. R. App. P. 33.1(a)(1). As a general rule, trial counsel
must object or otherwise preserve error, even if it is "incurable" or "constitutional." Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Without proper preservation, even constitutional
error may be waived. See Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000). Questions,
however, about the facial constitutionality of a statute upon which a defendant's conviction is based
should be addressed even when such issues are raised for the first time on appeal. See Holberg v.
State, 38 S.W.3d 137, 139 n.7 (Tex. Crim. App. 2000); Rabb v. State, 730 S.W.2d 751, 752 (Tex.
Crim. App. 1987); Bryant v. State, 47 S.W.3d 80, 84 (Tex. App.--Waco 2001, pet. ref'd); 43A
George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 42.253
(2d ed. 2001). 

 By contrast, a contention that a statute is unconstitutional as applied to an accused
because of vagueness and uncertainty must be asserted in the trial court or it is waived. See Curry
v. State, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995); Garcia v. State, 887 S.W.2d 846, 861
(Tex. Crim. App. 1994); State v. West, 20 S.W.3d 867, 873 (Tex. App.--Dallas 2000, pet. ref'd);
Sullivan v. State, 986 S.W.2d 708, 711 (Tex. App.--Dallas 1999, no pet.). In McGowan v. State,
the rationale underlying the foregoing rules was explained. 938 S.W.2d 732, 736 (Tex.
App.--Houston [14th Dist.] 1996), aff'd on other grounds, 975 S.W.2d 621 (Tex. Crim. App. 1998). 
The McGowan holding has been analyzed in detail:


 In McGowan v. State, the Fourteenth Court of Appeals concluded that the
rationale for the basic rule is that an unconstitutional statute affects the jurisdiction
or power of the courts to render a criminal judgment against the accused, and the lack
of this jurisdiction or power can be raised at any time. Thus, McGowan reasoned, the
rule should be applied only to those constitutional challenges that contest the power
of the trial court to enter and enforce a judgment. A "facial challenge" contests this
power; a challenge to the statute as applied does not, although it raises a possible
"defense" to conviction pursuant to this power. Invoking the categorization of rights
in Marin v. State, [851 S.W.2d 275 (Tex. Crim. App.1993)], the court reasoned that
the right not to be convicted of a Penal Code provision vague and overbroad as
applied to the facts of the case is a right subject to forfeiture by failure to assert it. 
Thus failure to raise the issue in the trial court means it is not preserved for appellate
consideration.



43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure
§ 42.254 (2d ed. 2001); see also McGowan, 938 S.W.2d at 739-41 (op. on reh'g); accord Bader v.
State, 15 S.W.3d 599, 603 (Tex. App.--Austin 2000, pet. ref'd); Medina v. State, 986 S.W.2d 733,
735-36 (Tex. App.--Amarillo 1999, pet. ref'd). 

 Because appellant failed to raise the "as applied" issue in the trial court in any
fashion, he has waived any right to review on his point of error to the extent that he challenges the
validity of section 481.123(b)(2) solely as applied to him. Furthermore, even had appellant not
waived his "as applied" contention, he has failed to show that in its operation the statute is
unconstitutionally vague as applied to him; that it may be unconstitutional as to others is not
sufficient. Bynum v. State, 767 S.W.2d 764, 774 (Tex. Crim. App. 1989); Vuong v. State, 830
S.W.2d 929, 941 (Tex. Crim. App. 1992).

 Appellant's point of error expressly challenges the constitutionality of the statute as
applied, but he did not preserve error. However, in the argument of his brief, appellant cites four
cases for general propositions of law dealing with a "facial" challenge to the constitutionality of a
statute on the basis of vagueness. It is obvious that appellant must have reference to that portion of
the statute under which he was convicted, which qualifies a substance analogue as a controlled
substance if the analogue is intended for human consumption and "the analogue is specifically
designed to produce an effect substantially similar to or greater than the effect of a controlled
substance listed in Schedule II or Penalty Group 2." Tex. Health & Safety Code Ann. § 481.123
(b)(2). Appellant urges that section 481.123(b)(2) is unconstitutionally vague because the statute
does not define the words "designed" and "effect." Appellant does not tell us of which constitutional
provision this statute runs afoul. Because appellant does not cite any state constitutional provision
or claim any greater protection under the Texas constitution, we presume that appellant only relies
on the due process clause of the Fourteenth Amendment to the United States Constitution. Under
the circumstances, we believe it appropriate to address the "facial" challenge to the statute, a claim
not required to be raised in the trial court below. See Rabb, 730 S.W.2d at 752.

 When reviewing the constitutionality of a statute, we presume that the statute is valid
and the legislature has not acted unreasonably or arbitrarily in enacting the statute. Ex parte
Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); Ex parte Anderson, 902 S.W.2d 695, 698
(Tex. App.--Austin 1995, pet. ref'd). The burden rests upon the individual challenging the statute
to establish its unconstitutionality. Cotten v. State, 686 S.W.2d 140, 145 (Tex. Crim. App. 1985);
Granviel, 561 S.W.2d at 511. This Court must uphold a statute if a reasonable construction can be
ascertained which will render the statute constitutional and carry out the legislative intent. Ely v.
State, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

 As argued in his brief, appellant seems to challenge the statute as being
unconstitutionally vague on its face. (3) Such a challenge will be sustained only if the statute is
impermissibly vague in all its applications. Briggs v. State, 740 S.W.2d 803, 806 (Tex. Crim. App.
1987). A facial challenge to the constitutionality of a statute imposes a heavy burden because the
challenger must establish that no set of circumstances exists under which the act would be valid. 
Briggs v. State, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); Anderson, 902 S.W.2d at 699.

 In examining a criminal statute for vagueness, the Court considers two factors. First,
the statute must give a person of ordinary intelligence a reasonable opportunity to know an act is
prohibited. See Kolender v. Lawson, 461 U.S. 352, 357 (1983); Grayned v. Rockford, 408 U.S. 104,
108 (1972); State v. Edmond, 933 S.W.2d 120, 125 (Tex. Crim. App. 1996); Long v. State, 931
S.W.2d 285, 287 (Tex. Crim. App. 1996); State v. Wofford, 34 S.W.3d 671, 678-79 (Tex.
App.--Austin 2000, no pet.). A statutory provision, however, need not be mathematically precise:
it need only give fair warning in light of common understanding and practices. Grayned, 408 U.S.
at 110. Second, the statute in question must provide sufficient notice to law-enforcement personnel
to prevent arbitrary or discriminatory enforcement. Id. at 108-09; Papachristoee v. City of
Jacksonville, 405 U.S. 156, 162 (1972). "Statutes without identifiable standards allow policemen,
prosecutors, and juries to pursue their personal predilections." Smith v. Gogven, 415 U.S. 566, 575
(1974). 

 As noted, appellant urges that the failure to define the words "designed" and "effect"
renders section 481.123(b)(2) unconstitutionally vague. A statute, however, is not unconstitutionally
vague merely because it fails to define words or phrases. Engelking v. State, 750 S.W.2d 213, 215
(Tex. Crim. App. 1988); Ahearn v. State, 588 S.W.2d 327, 338 (Tex. Crim. App. 1979). When
words are not defined in a statute, they are ordinarily given their plain meaning unless the statute
clearly shows that they were used in some other sense. Daniels v. State, 754 S.W.2d 214, 219 (Tex.
Crim. App. 1988); Ely, 582 S.W.2d at 419. Words defined in dictionaries with meanings so well
known as to be understood by a person of ordinary intelligence have been held not to be vague and
indefinite. Floyd v. State, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978); Anderson, 902 S.W.2d at 700. 
Statutory words are to be read in context and construed according to the rules of grammar and
common usage. Tex. Gov't Code Ann. § 311.011(a) (West 1988).

 Common definitions of the word "design" include "[t]o conceive; invent; contrive;
. . . [t]o have as a goal or purpose; intent." The American Heritage Dictionary of the English
Language 357 (William Morris ed., 1973). "Design" is synonymous with "intend," "purpose," or
"contemplate." Webster's Third New International Dictionary 611 (Philip Babcock Gove ed., 1986). 
The word has also been defined as "a deliberate undercover project or scheme entertained with
discreditable or hostile or often dishonest, treacherous, sinister, or seductive intent." Id. Black's
Law Dictionary defines "design" simply as "[a] plan or scheme" or "[p]urpose or intention combined
with a plan." Black's Law Dictionary 457 (7th ed. 1999). The word "effect" has been defined as
"[s]omething brought about by a cause or agent; result" and "[t]he way in which something acts upon
or influences an object: the effect of a drug on the nervous system." The American Heritage
Dictionary of the English Language 415 (William Morris ed., 1973) (emphasis in original). "Effect"
is also defined as "that which is produced by an agent or cause; a result, outcome, or consequence." 
Black's Law Dictionary 532 (7th ed. 1999).

 The statute does not clearly show that the words "designed" and "effect" were used
in a sense different from their plain meaning; rather, these words are so well known that, in the
context of the statute, it would be difficult to attribute any other meaning to them. The use of the
word "designed" is precise because, under section 481.123(b)(2), a controlled substance analogue
is a drug that does not naturally occur and therefore must be an agent purposefully created to cause
a particular result or "effect" upon consumption. Further, the use of the word "effect" is precise
because the statute determines the particular "effect" to be "substantially similar to, or greater than"
that "of a controlled substance listed in Schedule II or Penalty Group 2." Tex. Health & Safety Code
Ann. § 481.123(b)(2). Given these common, plain definitions of "design" and "effect," and given
that the statute targets a specific induced "effect," we cannot say that the statute fails to give a person
of ordinary intelligence a reasonable opportunity to know what is prohibited. Floyd, 575 S.W.2d at
23. Furthermore, the statute establishes determinate guidelines for law enforcement. Grayned, 408
U.S. at 108-09. We therefore hold that the failure to statutorily define "designed" and "effect" in
section 481.123(b)(2) does not render that portion of the controlled substance analogue statute
unconstitutionally vague on its face. 

 Appellant further expresses a disdain for controlled substance analogue statutes, and
complains that the Texas statute in question is not like its federal statutory counterpart which is
clearer and more precise. The fact that a state statute does not correspond with its federal counterpart
does not render it unconstitutionally vague. A mere determination that a statute is confusing or
difficult to understand is insufficient to render it unconstitutional. Dahl v. State, 707 S.W.2d 694,
700 (Tex. App.--Austin 1986, pet. ref'd). A statute is not vague merely because it is imprecise. 
Texas Dep't of Pub. Safety v. Chavez, 981 S.W.2d 449, 452 (Tex. App.--Fort Worth 1988, no pet.). 
"Condemned to the use of words, we can never expect mathematical certainty from our language." 
Grayned, 408 U.S. at 110.

 Further, we observe that other constitutional attacks upon Texas controlled substances
analogue statutes have been rejected in other contexts. See Robinson v. State, 783 S.W.2d 648 (Tex.
App.--Dallas 1990), aff'd, 841 S.W.2d 392 (Tex. Crim. App. 1992); Porter v. State, 806 S.W.2d
316 (Tex. App.--San Antonio, no pet.); One Thousand Four Hundred Sixty-Two Dollars in U.S.
Currency v. State, 774 S.W.2d 17 (Tex. App.--Dallas 1989, writ denied).


CONCLUSION


 Appellant's contentions are without merit. The judgment is affirmed. 



 __________________________________________

 W. Kenneth Law, Chief Justice 

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: April 24, 2003

Publish
1.   The judgment of conviction was signed by Judge Gary Steele, but Judge Jack H. Robison
presided at appellant's trial.
2.   The indictment tracks the language of section 481.123(b)(2), which provides:



 For the purposes of this chapter, a controlled substance analogue is
considered to be a controlled substance listed in Penalty Group 2 if the
analogue in whole or in part is intended for human consumption and:



 . . . . 



 
 the analogue is specifically designed to produce an effect substantially
similar to or greater than the effect of a controlled substance listed in
Schedule II or Penalty Group 2.

 


Tex. Health & Safety Code Ann. § 481.123(b)(2) (West Supp. 2003). 
3.   There is no claim of impermissible "overbreadth" or that appellant's rights under the First
Amendment to the United States Constitution are involved. See Bynum v. State, 767 S.W.2d 769,
712 (Tex. Crim. App. 1989).