January 17, 2008

The Honorable Jane Nelson
Chair, Committee on Health and Human Services
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0591

Re: Whether the Texas Lottery Commission may adopt a rule authorizing video or digital display of the outcome of instant bingo games (RQ-0597-GA)

Dear Senator Nelson:

You inquire about language that the Texas Lottery Commission (the "Commission") included in an amendment to its rule on pull-tab bingo adopted on June 25, 2007.[1] *See* 32 Tex. Reg. 4391, 4393–94 (2007) (to be codified at 16 TEX. ADMIN. CODE § 402.300(a)(19), (e)(10), (h)(10)) (Pull-Tab Bingo Games). The language at issue relates to video confirmation of the outcome of pull-tab bingo games. *See* Request Letter, *supra* note 1, at 1.

Article III, section 47(a) of the Texas Constitution provides that "[t]he Legislature shall pass laws prohibiting lotteries and gift enterprises in this State," subject to specific exceptions. TEX. CONST. art. III, § 47(a). A lottery is composed of three elements: (1) a prize or prizes; (2) the award or distribution of the prize or prizes by chance; and (3) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating. *See Brice v. State*, 242 S.W.2d 433, 434 (Tex. Crim. App. 1951). Texas Constitution article III, section 47(b), the "bingo amendment," adopted in 1980,[2] provides that the Legislature "by law may authorize and regulate bingo games conducted by a church, synagogue, religious society, volunteer fire department, nonprofit veterans organization, fraternal organization, or nonprofit organization supporting medical research or treatment programs." TEX. CONST. art. III, § 47(b). Before the bingo amendment was added to section 47, bingo played for a prize was an illegal lottery within article III, section 47 and statutes implementing that provision. *See State v. Amvets Post No. 80*, 541 S.W.2d 481, 482 (Tex. Civ. App.—Dallas 1976, no writ). Now, bingo games authorized by the Legislature pursuant to the

---

[1]*See* Letter from Honorable Jane Nelson, Chair, Committee on Health and Human Services, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 1 (June 27, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* Tex. S.J. Res. 18, 66th Leg., R.S., 1979 [Vol. 2] Tex. Gen. Laws 3221 (proposing Texas Constitution article III, section 47(b)); Texas Constitution, Amendments Adopted in 1979 and 1980, 1981, 67th Leg., R.S., 1981 [Vol. 2] Tex. Gen. Laws 4227 (adoption of section 47(b)).

bingo amendment are excepted from the article III, section 47(a) prohibition against lotteries, gift enterprises, and games of chance in general. *See* TEX. CONST. art. III, § 47(a); *Smith v. State*, 127 S.W.2d 297, 298 (Tex. Crim. App. 1939) (defining lottery). A game that is not in fact "bingo" within article III, section 47(b) will not be excepted by that provision from section 47(a). *See* Tex. Att'y Gen. Op. No. GA-0541 (2007) at 6 ("electronic pull-tab bingo," is not within the article III, section 47(b) authorization for charitable bingo).

Pursuant to the bingo amendment, the Texas Legislature adopted the Bingo Enabling Act (the "Act"), which governs the conduct of charitable bingo. *See* TEX. OCC. CODE ANN. § 2001.001 (Vernon 2004) (short title). The Act defines "pull-tab bingo" as follows:

> "Pull-tab bingo" means a form of bingo played using tickets with perforated break-open tabs, made of paper or paper products, the face of which is covered or otherwise hidden from view to conceal numbers, letters, or symbols, some of which have been designated in advance as prize winners. The term includes games commonly known as "instant bingo" and "break-open bingo."

*Id.* § 2001.002(24). The Commission administers the Act, and pursuant to its rule-making authority it has adopted rules that further define pull-tab bingo. *See id.* §§ 2001.051 (Commission shall administer chapter 2001), .054 (general rule-making authority); 16 TEX. ADMIN. CODE §§ 402.100 (2007) (Definitions), .300 (Pull-Tab Bingo Games), .301(h)(10) (Bingo Card/Paper).

Your inquiry relates to recent Commission amendments to its rule on pull-tab bingo that would allow a "graphic and dynamic representation" of the outcome of pull-tab bingo games. Request Letter, *supra* note 1, at 1; *see* 32 Tex. Reg. 4388, 4391 (to be codified at 16 TEX. ADMIN. CODE § 402.300(a)(19)) (Pull-Tab Bingo Games). You are concerned that these changes in the rule will result in the kind of electronic pull-tab bingo that Attorney General Opinion GA-0541 concluded not to be within the constitutional authorization for bingo. *See* Request Letter, *supra* note 1, at 1; *see* 16 TEX. ADMIN. CODE § 402.300 (2007) (Pull-Tab Bingo Games), Tex. Att'y Gen. Op. No. GA-0541 (2007) at 6. Attorney General Opinion GA-0541 addressed Senate Floor Amendment No. 24 to House Bill 3, legislation proposed but not enacted during the Seventy-ninth Regular Legislative Session, and concluded that the kind of electronic game it authorized was not "bingo" within the bingo amendment. *See* Tex. H.B. 3, 79th Leg., R.S. (2005);[3] S.J. of Tex., 79th Leg., R.S. 1807–13 (2005) (text of Senate Floor Amendment No. 24).[4] We will summarize the Senate floor amendment upon which you base your question.

Senate Floor Amendment No. 24 would have authorized numerous electronic innovations to bingo, including an electronic version of pull-tab bingo that could be played on a computer terminal with touch screen capacity. *See* S.J. of Tex., 79th Leg., R.S. 1807–13 (2005) (Senate Floor

---

[3]*Available at* http://www.legis.state.tx.us (last visited Jan. 7, 2008).

[4]*Available at* http://tlo2.tlc.state.tx.us/sjrnl/home.htm (last visited Jan. 7, 2008).

Amendment No. 24).[5] Computer hardware or software known as a site controller would store and distribute electronic pull-tab bingo tickets for display on electronic monitoring terminals or card-minding devices.[6] *See id.* at 1808–09. The site controller could create, shuffle, store, and configure electronic pull-tab bingo tickets, distribute such tickets to terminals or card-minding devices, account for electronic credits purchased, played, or won by playing such bingo games, play electronic bingo games, and perform other functions. *See id.* at 1809. A bingo player could use a plastic, magnetic stripe, paper, or smart card[7] to enable or track the play of bingo games, to record electronic credits purchased, played, or won and to redeem credits purchased, played or won through a cashier or redemption system. *See id.* at 1807–10. The player could also use a card-minding device or an electronic monitoring terminal to purchase, play, and learn the outcome of electronic bingo games. *See id.* The card-minding device could be used "to display graphics and animation that correspond to or represent, in an entertaining manner, the outcome of an approved electronic pull-tab bingo ticket or game," while an electronic monitoring terminal could create graphics and animation "to correspond to, display, or represent, in an entertaining manner, the outcome of an approved electronic pull-tab bingo ticket or electronic bingo cards." *Id.* 1809–10 (proposing amendments to sections 2001.409(a)(5) and 2001.4092(b) of the Occupations Code).

Senate Floor Amendment No. 24 would have allowed pull-tab bingo games to be computerized in their entirety, from the choice of winning numbers to a player's redemption of his winnings. The player would have very little to do, aside from occasionally touching a computer screen or swiping his card at a terminal. Such games would be a kind of gambling far different from the social bingo contemplated by the Legislature and voters who approved the bingo amendment. *See* Tex. Att'y Gen. Op. No. GA-0541 (2007) at 5. Although games proposed by Senate Floor Amendment No. 24 might have been called "bingo," they resembled video slot machines or other illegal gambling devices. *See* TEX. PENAL CODE ANN. § 47.01(4) (Vernon 2003) (defining "gambling device"); *State v. Fry*, 867 S.W.2d 398, 402 (Tex. App.—Houston [14th Dist.] 1993, no. writ) (video slot machine is a gambling device); *see also* I. Nelson Rose, *Is It Bingo, or A Slot Machine?* 7 Gaming Law Rev. 99 (2003). Attorney General Opinion GA-0541 concluded that a "Texas court would find that 'bingo' within article III, section 47(b) does not include 'electronic pull-tab bingo' as described by Senate Floor Amendment No. 24 to House Bill 3 of the Seventy-ninth Regular Legislative Session," and that article III, section 47(b) of the Texas Constitution would not except the electronic pull-tab bingo game from the prohibition against lotteries in section 47(a). The opinion accordingly concluded that electronic pull-tab bingo would be unconstitutional under article III, section 47(a). Tex. Att'y Gen. Op. No. GA-0541 (2007) at 6.

---

[5]*See id.*

[6]A "[c]ard-minding device" is defined by Commission rule as "[a]ny mechanical, electronic, electromechanical or computerized device, and including related hardware and software, that is interfaced with or connected to equipment used to conduct a game of bingo and which allows a player to store, display, and mark a bingo card face five spaces wide by five spaces long, the center space free, and the other spaces containing pre-printed numbers between 1 and 75, inclusive." 16 TEX. ADMIN. CODE § 402.100(5) (2007) (Definitions), *renumbered at* 32 Tex. Reg. 6148, 6149 (to be codified at 16 TEX. ADMIN. CODE § 402.100(6)).

[7]A smart card looks like a credit card, but contains an embedded microprocessor that can be read by a computer. "What is a "smart card"? howstuffworks, *available at* http://computer.howstuffworks.com/question332.htm (last visited Jan. 7, 2008).

The Bingo Enabling Act expressly provides that it is not to be construed to provide electronic video bingo, in the following uncodified provision adopted in 1995:

> Nothing in this Act shall be construed as authorizing any game using a video lottery machine or machines. In this section "video lottery machine" or "machine" means any electronic video game machine that, upon insertion of cash, is available to play or simulate the play of a video game, including but not limited to video poker, keno, and blackjack, utilizing a video display and microprocessor in which the player may receive free games or credits that can be redeemed for cash, coins, or tokens or that directly dispenses cash, coins, or tokens.

Act of May 29, 1995, 74th Leg., R.S., ch. 1057, § 10, 1995 Tex. Gen. Laws 5222, 5225 (House Bill 3021). Thus, the Legislature did not intend the Act to authorize any electronic video lottery game.

You are concerned that the following language in the Commission rule on pull-tab bingo authorizes electronic bingo:

> (a) Definitions . . . .
>
> . . . .
>
> (19) Video Confirmation–A graphic and dynamic representation of the outcome of a bingo event ticket that will have no effect on the result of the winning or losing event ticket.
>
> . . . .
>
> (e) Sales and redemption.
>
> . . . .
>
> (10) A licensed authorized organization may use video confirmation to display the results of an event ticket pull-tab bingo game(s). Video confirmation will have no effect on the play or results of any ticket or game.
>
> . . . .
>
> (h) Style of play . . . .
>
> . . . .
>
> (10) Video Confirmation shall be subject to Commission approval.

32 Tex. Reg. 4388, 4391–94 (to be codified at 16 TEX. ADMIN. CODE § 402.300 (Pull-Tab Bingo Games).

The above rule applies only to "event tickets." *See id.* (to be codified at 16 TEX. ADMIN. CODE § 402.300(a)(19), (e)(10)). The Commission's rules regulate "event tickets" but do not define this term. *See id.* (to be codified at 16 TEX. ADMIN. CODE § 402.300(a)(1)–(19) (definitions); (h)(6) (listing "Event Ticket" under "Style of Play")). However, a publication of the Commission describes "event tickets" as follows:

> Event tickets include the same features of regular pull-tabs but incorporate a second level of play that provides an additional opportunity to win. Event ticket winners are determined by some subsequent action such as drawing of ball(s), spinning wheel, opening of a seal on a flare(s) or any other method approved by the commission, so long as that method has designated numbers, letters, or symbols that conform to the randomly selected numbers or symbols.

Texas Lottery Comm'n., *Charitable Bingo Bulletin*, at 6 (Jan./Feb./Mar. 2003).[8] Thus, the video confirmation you inquire about applies to the secondary level of play incorporated into event tickets.

We do not know how a particular video confirmation device operates or what its full capacities are. The nature of a particular device raises fact questions, which cannot be addressed in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0391 (2006) at 12. We will, however, base our reply to your question on information provided by the Commission. A brief submitted by the Commission states that the above rule "merely permits video display of winning numbers that have been otherwise determined by the separate, non-electronic play of a game."[9]

While video confirmation may be one component of electronic bingo, we do not believe that video confirmation of a bingo result would by itself comprise electronic bingo. Assuming that the video confirmation device does nothing more than inform players of the winning numbers in a bingo game, we do not believe that it would convert a bingo game into electronic bingo.

However, the application of video confirmation to event tickets raises other concerns under the Texas Constitution and the Act. The *Charitable Bingo Bulletin* issued by the Commission includes suggestions for introducing event tickets to bingo players, such as "[m]ake the playing of the event ticket an independent and separate game for maximum excitement and impact," and "[d]on't discontinue the original instant pull-tabs that you've been offering over the years." Texas

---

[8]*Available at* http://www.txbingo.org (last visited Jan. 7, 2008).

[9]*See* Brief from Sandra K. Joseph, Assistant General Counsel, Texas Lottery Commission, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General of Texas, at 1 (July 26, 2007) (on file with the Opinion Committee).

Lottery Comm'n, *Charitable Bingo Bulletin*, at 6 (Jan./Feb./Mar. 2003). Your inquiry raises the validity of the "event ticket" game itself. *See* Request Letter, *supra* note 1, at 1–2. We question whether the Legislature and voters contemplated that "bingo" could encompass a second-level "event ticket" game as described above or that "graphic and dynamic" video confirmation of a result was an aspect of bingo. *See Wentworth v. Meyer*, 839 S.W.2d 766, 767 (Tex. 1992) (if there is doubt as to the meaning of constitutional language, courts will consider the intent of the people who adopted the provision); *see also* TEX. OCC. CODE ANN. § 2001.416(a) (Vernon 2004) (a game of chance other than a raffle or bingo conducted under chapter 2002 may not be conducted during a bingo occasion). You do not expressly ask whether an event ticket game is authorized by article III, section 47(b), and we do not reach this question.

## S U M M A R Y

A Texas Lottery Commission rule authorizing the "graphic and dynamic" video confirmation device solely to inform players of the winning numbers in a bingo game would not by itself convert the game into electronic bingo.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee